| STATE OF NORTH CAROLINA | | File No. 19-CVS-0906 | |
|---|---|---|---|
| UNION County | FILED | In The General Court Of Justice ☐ District ☒ Superior Court Division | |

Name Of Plaintiff
YURII KOROTKOV and IRYNA PAVLOVNA KOROTKOVA

Address
POST OFFICE BOX 1739

City, State, Zip
MOORESVILLE     NC     28115

18 APR -1 PM 2:37
UNION COUNTY, C.S.C.

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

**VERSUS**

Name Of Defendant(s)
SUNTRUST MORTGAGE, INC.

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

**To Each Of The Defendant(s) Named Below:**

Name And Address Of Defendant 1
SUNTRUST MORTGAGE, INC.
c/o: CORPORATION SERVICE COMPANY, Registered Agent
2626 GLENWOOD AVENUE, SUITE 550
RALEIGH     NC     27608

Name And Address Of Defendant 2

⚠ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

¡**IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)
M. SHANE PERRY
COLLUM & PERRY, PLLC
POST OFFICE BOX 1739
MOORESVILLE     NC     28115

Date Issued: 4/1/19     Time: 2:37  ☐ AM ☒ PM
Signature
☒ Deputy CSC     ☐ Assistant CSC     ☐ Clerk Of Superior Court

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

Date Of Endorsement     Time  ☐ AM ☐ PM
Signature
☐ Deputy CSC     ☐ Assistant CSC     ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

Case 3:19-cv-00210-RJC-DSC   Document 1-1   Filed 05/01/19   Page 1 of 20

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA FILED IN THE GENERAL COURT OF JUSTICE
COUNTY OF UNION                    SUPERIOR COURT DIVISION
19 APR -1 PM 2: 37  19-CVS-_____

19CVS00906

YURII KOROTKOV &
IRYNA PAVLOVNA KOROTKOVA

Plaintiffs

v.

SUNTRUST MORTGAGE, INC.

Defendant

**COMPLAINT**

**WITH DEMAND FOR TRIAL BY JURY**

**NOW COMES** Plaintiffs, Yurii Korotkov and Iryna Pavlovna Korotova, by and through Counsel, and respectfully pleads to this Court the following:

### JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to N. C. Gen. Stat. § 1-75.4.

2. Venue is proper in this Court pursuant to N. C. Gen. Stat. § 1-82 because the acts and transactions occurred in Union County, North Carolina, Plaintiffs reside in Union County, North Carolina and the Defendant transacts business in Union County, North Carolina

### PARTIES

3. Yurii Korotkov and Iryna Pavlovna Korotova, ("Plaintiffs") are individuals and citizens of the State of North Carolina who reside in Union County, North Carolina.

4. Plaintiffs are "consumers" as defined by N.C. Gen. Stat. § 75-50(1).

5. Defendant, SunTrust Mortgage, Inc., was and is a "debt collector" as defined by N.C. Gen. Stat. § 75-50(3).

6. Defendant is a corporation that provides residential mortgage origination and loan servicing. It has a principal place of business at 901 Semmes Avenue, Richmond, VA 23224. Defendant transacts or has transacted business in North Carolina and throughout the United States.

7. Defendant can be served through its servicing agent Corporation Service Company 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

8. The loan in this matter is a "federally related mortgage loan" as defined by the Real Estate Settlement Procedures Act of 1974 at 12 U.S.C. §2602(1), *et. seq.*, and 12 C.F.R. §1024.2(b), and a home loan as defined by N.C. Gen. Stat. §45-90(1).

9. Defendants are "servicers" as that term is defined as "a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)" pursuant to the Real Estate Settlement Procedures Act of 1974 at 12 U.S.C. § 2601(i)(2), *et.seq.*, 12 C.F.R. §1024.2," and N.C. §53-244.030 (22).

10. At all times relevant, Defendant was engaged in commerce in North Carolina.

11. Defendant was represented on this debt in the Plaintiff's bankruptcy petition by Johnson & Freedman, LLC, 1587 Northeast Expressway, Atlanta, Georgia, 30329.

12. The alleged debt in this matter is a "debt" alleged to be owed as defined by N.C. Gen. Stat. §75-50(2).

13. The alleged debt at issue arose out of a transaction that was primarily for personal, family or household purposes.

## FACTUAL ALLEGATIONS

14. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein

15. On June 5, 2009, The Plaintiffs filed a Voluntary Petition pursuant to Chapter 13 of the United States Bankruptcy Code, Case No. 09-31457, W.B.N.C.

16. On or about August 26, 2009, an Order Confirming Chapter 13 Plan was entered by the Bankruptcy Court (BK).

2

17. SunTrust Mortgage, Inc. (SunTrust), was a secured creditor in this bankruptcy holding the Note secured on the property located at 3012 Twilight Lane, Indian Trail, North Carolina 28079 (the Subject Property).

18. The Plaintiffs had an arrearage of about $19,474.60 on the Subject Property at the time of the Chapter 13 bankruptcy filing.

19. The Plaintiffs began making timely payments each month while in their bankruptcy from July 2009 through April 2015.

20. The Plaintiffs payments included their regular monthly payment plus the monthly arrearage payment.

21. The Plaintiffs made this monthly payment in cash at their local SunTrust Branch in Monroe, North Carolina.

22. On December 4, 2014, the Defendant filed a Creditor Statement of Amounts Required to Bring Loan Current and alleged that that the Plaintiffs were four (4) months delinquent on their post-petition mortgage payments.

23. The Plaintiffs believed that they were current on their post-bankruptcy petition home loan obligations.

24. The Plaintiffs contacted their bankruptcy attorney, Matthew Crow, to make an independent inquiry and investigate the issue.

25. Mr. Crow subsequently contacted SunTrust Mortgage directly by telephone on numerous occasions to identify which months the Plaintiffs allegedly did not remit home loan payments.

26. On or about April 14, 2015, Mr. Crow was told by a SunTrust Mortgage bankruptcy department representative that the Plaintiffs were current on their mortgage payments and to disregard the above noted statement filed with the Court on December 4, 2014.

3

27. Mr. Crow relied on this telephone conversation and did not file a Motion to Deem Mortgage Current.

28. The Defendant provided Mr. Crow with a loan payment history on January 9, 2015. However, Mr. Crow was still unable to identify which four months the debtors failed to remit their mortgage payments.

29. SunTrust representatives even asserted that the missed payments are perhaps pre-bankruptcy petition, although the Chapter 13 Trustee has fully paid on its pre-petition claim and the assertion is in contradiction of the Defendant's Creditor Statement of Amounts Required to Bring Loan Current filed on December 4, 2014 in the bankruptcy court.

30. On December 17, 2014, the Debtors subsequently received a standard discharge.

31. On April 30, 2015, the Debtors' case was closed by the United States Bankruptcy Court.

32. After the Plaintiffs' bankruptcy case was closed on April 30, 2015, the Defendant began foreclosure proceedings, stopped applying the Plaintiffs' monthly mortgage payments, assessed property inspection fees, title search fees, and foreclosure attorney's fees, and was still unable to identify to Mr. Crow which months the Plaintiffs allegedly defaulted on their mortgage payments.

33. Mr. Crow contacted the Hutchens Law Firm which represented SunTrust during the pendency of the debtors' active case for assistance, and they also were unable to help the Defendant identify the four alleged missed post-petition mortgage payments.

34. During that time the Plaintiffs continued to remit their proper monthly home loan payments to the Defendant and those funds were improperly held in suspense by the Defendant.

4

35. The Plaintiffs incurred expenses and reasonable legal fees both in their attempts to directly resolve their issue with the Defendant and in the preparation and prosecution of the Motion required to correct the issue with the Defendant.

36. As a result of the Plaintiffs' motion, the bankruptcy Court entered a consent order (entered March 28, 2016, W.B.N.C. 09-31457, Doc. 63) which contained the following:

   a. On or about September 22, 2009, SunTrust filed a proof of claim which listed pre-petition mortgage arrears as $19,474.60.

   b. On or about June 14, 2012, SunTrust filed a Motion for Relief from Stay which was subsequently resolved by the Consent Order entered on or about November 06, 2012.

   c. SunTrust filed a Notice of Mortgage Payment Change on or about April 10, 2014.

   d. On or about Oct 29, 2015, Debtors filed an Ex Parte Motion to Reopen Bankruptcy Case and the Motion in connection to this Notice.

   e. The Court entered an Order Granting Motion to Reopen Bankruptcy Case on or about October 30, 2015.

   f. On or about January 25, 2016, SunTrust filed its Opposition to the Motion.

   g. Debtors have been returned the following checks previously received from SunTrust: (1) $1,002.00 dated 05/20/15 (Received) (2) $1,002.00 dated 06/18/15 (Received) (3) $1,001.97 dated 07/16/15 (Received) (4) $1,002.00 dated 08/14/15 (Received).

   h. SunTrust has stopped payment on the following checks that were previously sent to the Debtors: (1) $1,002.00 dated 10/19/15 (2) $1,002.00 dated 11/23/15.

   i. The Parties entered into a consent order which stated: "Upon receipt of the checks from the [Plainiff], SunTrust will bring the [Plaintiffs'] mortgage account current through March

2016; SunTrust will waive any foreclosure costs, interests, late fees and property inspection fees.

37. The Plaintiffs' home loan account was current and on the date of the consent order March 28, 2016.

38. As ordered by the Court, the Plaintiffs returned the checks to their bankruptcy attorney who returned them to SunTrust.

39. The Plaintiffs' home loan account was current and paid up to the date of the consent order March 28, 2016.

40. On Monday, March 28, 2016, the Certificate of Service for the Order Deeming Mortgage Current was mailed out via the United States Postal Service to SunTrust and to SunTrust's Attorney via the CM/ECF service.

41. On March 28, 2016, the Order Closing the Reopened Bankruptcy Case was filed.

42. On Wednesday, March 30, 2016, the Certificate of Service for the Order Closing the Reopened Bankruptcy was mailed out via the United States Posted Service to SunTrust and via the CM/ECF service to SunTrust's attorney.

43. After the consent order, the Plaintiffs continued to make the required monthly mortgage account payments at their local SunTrust branch.

44. The Plaintiffs paid in cash each time.

45. Despite the Consent Order on April 22, 2016, the Defendant sent the Plaintiff's an "initial breach letter" notifying them that their account was in default.

46. SunTrust failed to apply the cash home loan payments immediately and posted them more than a day later as required by 12 U.S.C. § 226(c)(1)(i) and N.C.G.S. § 45-91(2) causing a misapplication of payments.

6

Case 3:19-cv-00210-RJC-DSC   Document 1-1   Filed 05/01/19   Page 8 of 20

47. SunTrust improperly created a suspense account from which it improperly drafted expenses to pay to itself.

48. SunTrust contacted Plaintiffs directly by sending letters and making phone calls to Plaintiffs' cell and home phones to collect the alleged debt despite the Plaintiffs being represented by an attorney in this matter.

49. SunTrust continued to charge fees to the Plaintiffs' home loan account for "inspection fees" that were not authorized since the Plaintiffs were current on the home loan payment.

50. Plaintiffs contacted SunTrust numerous times to dispute the fees owed and were given varying responses about why the account was in foreclosure and the debts were owed.

51. SunTrust would send "property inspectors" to the home at a minimum of once a month to take pictures and leave notices.

52. During one visit the inspector served documents directly on the Plaintiffs.

53. Agents of SunTrust, acting as "property inspectors," trespassed on the Plaintiffs' property at least five times from March 28, 2016 to June 16, 2016.

54. The Defendant charged the cost of these inspections to the Plaintiffs' home loan account.

55. Despite the property inspectors being told that the Plaintiffs were current on their home loan account, the inspectors spoke to neighbors, specifically the children of the Plaintiffs' neighbors, and told them that the Plaintiffs were losing their home for failure to make their payments, or words to that effect.

56. This caused considerable embarrassment, stress and emotional pain to the Plaintiffs and their children.

57. On April 26, 2016, SunTrust sent Dorothy Still with New Visions Reality Group to conduct a Broker Price Opinion (BPO) on the Plaintiffs' property since it was allegedly in foreclosure.

58. Once again SunTrust caused the Plaintiffs' property to be trespassed on due to their negligence.

59. On May 5, 2016, while the Korotkovs were receiving guests for Mr. Korotkov's birthday party, an agent of SunTrust came to the Korotkov's front door and posted a delinquency notice to the Plaintiffs' door.

60. This caused great embarrassment and ruined what should have been a happy celebration in the Plaintiffs' home.

61. On June 4, 2016, a "property inspector" visited the Plaintiffs' house, trespassed, spoke to Mr. Korotkov and served him with a notice from SunTrust regarding the Plaintiffs' home loan.

62. During the communications with the Plaintiffs, the Defendant failed to advise the Plaintiffs that the communications were an attempt to collect a debt.

63. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

64. Defendant's conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the damages to the Plaintiffs that are outlined more fully above.

65. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiffs' rights under the law and with the purpose of injuring and coercing Plaintiffs to pay a discharged debt.

66. The actions of Defendant and its agents have proximately caused injury to Plaintiff in the form of emotional distress, humiliation, embarrassment, mental anguish, attorney fees and other expenses, including hundreds of dollars in improper fines and fees.

67. Defendant's conduct described herein is extreme and outrageous.

68. Defendant's conduct as described herein was deceptive and constitutes harassment.

8

69. The Plaintiffs have suffered actual damages and emotional distress as a direct and proximate result of the intentional or willful acts or by the reckless indifference to the results of the actions detailed in this Complaint.

70. Moreover, the actions of the Defendant resulted in damages to the Plaintiffs for which the Defendant is liable pursuant to North Carolina common law and N.C. Gen. Stat. § 1D.

71. The acts of the Defendant as alleged herein were done in bad faith and were intentional, especially in light of the consent order entered by the bankruptcy Court.

72. The factual allegations described in this complaint are incorporated by reference into the claims made herein to provide the particularity required by Rules 8 and 9 of the North Carolina rules of Civil Procedure and the North Carolina common law relevant to those claims.

73. The Defendant has failed to act in good faith and have ignored the serious and material issues and willfully blinded themselves to the true status of the mortgage loan.

74. The Defendant has knowingly and willfully misrepresented, misstated, and/or omitted the true facts concerning the actual status of Plaintiffs' loan.

75. The Defendant has placed their interest above that of Plaintiffs and unfairly and deceptively ignored their statutory and contractual duties including those that were agreed to as part of their license to legally operate in the State of North Carolina.

76. Plaintiffs have been left with no other option but to seek the assistance of the Court after reasonable efforts have been ignored and have failed to resolve their mortgage situation.

77. The Defendant's Net Income for 2018 was $2,775,000,000 and its total assets were $215,543,000,000 as reported in its 10-K submitted to the United States Securities and Exchange Commission.

### **VIOLATIONS OF N. C. Gen. Stat. § 75-50, *et seq.***

9

Case 3:19-cv-00210-RJC-DSC   Document 1-1   Filed 05/01/19   Page 11 of 20

78. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

79. The Defendant continued to call and send letters to the Plaintiffs claiming the home was in foreclosure, despite payments being made as required by Plaintiffs.

80. The Defendant sent property inspectors to the home to trespass on the property, take photographs, even when told to leave and stated that they needed to contact the bank regarding the mortgage.

81. The property inspector also would state that the Plaintiffs "need to pay their bills" to other residents of the neighborhood and children of the Plaintiffs.

82. This behavior constitutes a specific violation of N.C. Gen. Stat. § 75-51(3).

83. The Defendant stated the home was in foreclosure and the Plaintiffs would be forced to leave unless payment was made. Plaintiffs had made all required payments and the loan was current at that point.

84. This behavior constitutes a specific violation of N.C. Gen. Stat. § 75-51(6), (7) and (8).

85. The collection letters and collection calls made to the Plaintiffs by the Defendant did not state the fact that each communication was an attempt to collect a debt.

86. This behavior constitutes a specific violation of N.C. Gen. Stat. § 75-52(2).

87. The Defendant sent property inspectors to Plaintiffs' residence who, while there, trespassed on Plaintiffs' land, spoke to the Plaintiffs' children and neighbors about the debts allegedly owed, and left correspondence for the Plaintiffs around the property.

88. This behavior constitutes a general violation of N. C. Gen. Stat. § 75-53.

89. This behavior constitutes a specific violation of N. C. Gen. Stat. § 75-53(1)

90. This behavior constitutes a specific violation of N. C. Gen. Stat. § 75-53(2)

91. Defendant contacted the Plaintiffs repeatedly to discuss "foreclosure", even though the Plaintiffs had made all payments due at that point and told the Defendant the same.

92. This behavior constitutes a specific violation of N. C. Gen. Stat. § 75-54(4).

93. Defendant continued to contact the Plaintiffs when it knew the Plaintiffs were represented by an attorney on that alleged debt.

94. The Defendant participated in the Plaintiffs' bankruptcy by filing proofs of claim on the alleged debt.

95. Such action demonstrates clearly that the Defendant knew that the Plaintiffs were represented on the alleged debt.

96. This behavior constitutes a general violation of N.C. Gen. Stat. § 75-55.

97. This behavior constitutes a specific violation of N.C. Gen. Stat. § 75-55(3)

## SLANDER OF TITLE

98. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

99. The Defendant has slandered the title of the Plaintiffs' property by the actions alleged above.

100. The Defendant uttered slanderous words in regard to the title of the Plaintiffs' property when the Defendant's agent told the Plaintiffs' children and their neighbors that the Korotkovs were delinquent on their mortgage payments.

101. Moreover the Defendant placed a late notice on the Plaintiffs' door which also stated that the Plaintiffs were delinquent and the Defendant was pursuing legal action based on this false delinquency.

102. The slanderous words were untrue because the Plaintiffs were not delinquent.

103. The Defendant acted with malice because it knew the Plaintiffs were not delinquent; it had been told by a federal court the Korotkovs were not delinquent.

104. Because of the Defendant's actions, the Plaintiffs were humiliated in their neighborhood and their children were ridiculed.

## FRAUD

105. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

106. The Defendant has committed fraud by the actions alleged herein.

107. The Defendant made a false representation when it told the Plaintiffs that they were delinquent on their home loan.

108. This language was reasonably calculated to deceive because its plain meaning would make the Plaintiffs believe they were delinquent.

109. The Defendants intended for the Plaintiffs to be deceived by this language.

110. The Plaintiffs initially believed the Defendant about this alleged delinquency.

111. Because of this deception the Plaintiffs paid the Defendant more than they were legally required to.

112. This caused the Plaintiffs to realize loss of the money that was paid above what was required.

## NEGLIGENT MISREPRESENTATION

113. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

12

114. The Plaintiffs were justified in relying on the representations of the Defendant when it communicated to the Plaintiffs that they were told they were delinquent on their home loan payments

115. The Plaintiffs over-paid their home loan payments because of their reliance on the Defendant.

116. The Defendant should have known the Plaintiffs were not late on their mortgage because a federal judge had very recently entered an order telling it so.

117. The Defendant owes a duty to the Plaintiffs to apply their home loan payments properly and to keep their account accurate.

## **CONVERSION**

118. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

119. As demonstrated herein, SunTrust collected money from the Plaintiffs that it had no right to collect.

120. By so doing, the Defendant exerted unlawful control over the Plaintiff's property to the exclusion of the Plaintiffs.

121. The Defendant converted the Plaintiff's property to its own use by:

   a) Not properly applying Plaintiff's mortgage payments;

   b) Not accurately accounting for the money after multiple requests by the Plaintiff;

   c) By placing it into an unauthorized suspense account to which Plaintiff had no access or accounting;

d) By collecting and paying excessive fees to themselves and others for various fees and charges described more particularly in this Complaint to the exclusion of the rights of the rightful owner, the Plaintiff.

## N.C. General Statutes § 75-1.1

122. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

123. The Defendant has engaged in abusive conduct in the servicing of Plaintiffs' mortgage loan that occurred outside the realm of debt collection.

124. By its unlawful conduct as alleged herein, the Defendant engaged in unlawful business acts or practices in violation of N.C. Gen. Stat. §75-1.1.

125. By its unlawful conduct as alleged herein, the Defendant engaged in unfair business acts or practices in violation of N.C. Gen. Stat. §75-1.1.

126. By its unlawful conduct as alleged herein, the Defendant engaged in deceptive business acts or practices in violation of N.C. Gen. Stat. §75-1.1.

127. The Defendant has repeatedly made false misrepresentations to the Plaintiffs and others, with knowledge of their falsity, or with reckless disregard as to whether the representations were true or false.

128. The Defendant continually made misrepresentations with the intent of misleading Plaintiffs into relying on these misrepresentations and Plaintiffs justifiably relied on the misrepresentations to their financial detriment by making excessive payments when they were not necessary.

129. As a result of the Defendant's misrepresentations, Plaintiffs have suffered and continue to suffer financial harm in the form of unjustified costs added to their monthly mortgage payment,

14

Case 3:19-cv-00210-RJC-DSC   Document 1-1   Filed 05/01/19   Page 16 of 20

fees and monies misappropriated from the escrow or suspense account to pay items that are not principal and interest.

130. The Defendant has engaged in unfair and/or deceptive acts and practices by the following:

   a) Imposing and collecting unnecessary and excessive fees and charges not authorized by the loan documents or by applicable law;

   b) Imposing and collecting excessive interest;

   c) Failing to properly and/or timely credit Plaintiffs' payments to the account;

   d) By creating a suspense account that was not authorized by the mortgage loan documents;

   e) Improperly administering "suspense" and "corporate advance" accounts; more specifically by applying payments at the discretion of the Lender;

   f) Misleading or otherwise misinforming Plaintiffs about the amounts properly due and owing;

   g) Imposing late charges improperly and unjustifiably;

   h) Threatening foreclosure though Plaintiffs have made their monthly payments on time since the close of their bankruptcy case;

   i) Misappropriating monthly payments made by Plaintiffs;

   j) Failing to properly administer Plaintiffs' account, including, without limitation: suspense accounts, corporate advance accounts, and principal and interest obligations; and,

   k) Treating Plaintiffs unfairly and without regard to its obligation of good faith and fair dealing.

131. The Defendant's acts and omissions as alleged herein proximately caused economic injury to Plaintiff; are in and affecting commerce; have the capacity to deceive an ordinary consumer; are unscrupulous, immoral, and oppressive; and constitute unfair and deceptive trade practices under N.C. Gen. Stat. §75-1.1, thereby entitling Plaintiffs to the relief requested herein.

## NEGLIGENT ACCOUNTING AND SERVICING

132. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

133. The Defendant had a duty to properly service the Plaintiff's account, to keep accurate records and to apply funds properly.

134. The Defendant failed properly service the Plaintiff's account, failed to keep accurate records and failed to properly apply funds in the Plaintiff's account.

135. The Defendant created a suspense account when such was not warranted and through its own negligence the Defendant caused the Plaintiffs to be delinquent on their home loan account.

136. The Defendant's actions caused harm to the Plaintiffs in the form of improper fees and other economic damages as well as emotional distress, humiliation, anxiety and fear of losing their home.

137. There was no legal basis for the Defendant's actions.

138. The Defendant's actions are the proximate and legal cause of the Plaintiffs' damages.

## N.C. General Statutes § 45-90

139. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

16

140. Among other sections of N.C.G.S. 45-90, *et. seq.*, the Defendant violated § 45-91 by failing to notice the Plaintiffs of fees that were incurred and by failing to apply the Plaintiffs loan payments within the time required by statute.

**DEMAND FOR JURY TRIAL**

141. Plaintiffs exercise their right to a trial by jury on all issues so triable.

**WHEREFORE,** the Plaintiffs respectfully request the following relief from the Court:

1. That Plaintiffs have a trial by jury upon all issues so triable;

2. That Plaintiffs be awarded damages against the Defendant in an amount to be determined at trial that will fairly and reasonably compensate them for the emotional distress, aggravation, annoyance, humiliation, marital strife and inconvenience suffered as a result of the Defendant's unlawful acts;

3. That Plaintiffs be awarded actual and compensatory damages to be determined at trial;

4. That Plaintiffs be awarded statutory damages of $4,000 per violation as allowed pursuant to N. C. Gen. Stat. §75-56(a);

5. That Plaintiffs be awarded actual damages, costs and reasonable attorney's fees pursuant to N.C. Gen. Stat. §§ 75-16.1 and 75-56 and N.C. Gen. Stat. § 45-94;

6. That Plaintiffs be awarded actual damages and treble or punitive damages pursuant to N.C. Gen. Stat. §§75-16 and 75-16.1.

7. That Plaintiffs be awarded punitive damages as allowed by N.C. Gen. Stat. 1D; and,

8. That Plaintiffs be awarded such further and general relief that this Court may deem just, equitable and proper.

**TODAY** is April 1, 2019:

        **COLLUM & PERRY**

        /s/ M. Shane Perry

        M. Shane Perry
        NC Bar No. 35498
        *Attorney for Plaintiff*
        109 W. Statesville Ave., Mooresville, NC 28115
        Telephone: 704-663-4187
        Facsimile: 704-663-4178

18